## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MEADOWCROFT CONDOMINIUM
ASSOCIATION, INC.,

     Plaintiff,

v.

FLORIDA SOUTHERN ROOFING
& SHEET METAL, INC.,

     Defendant,

_____

and

ASPEN SPECIALTY INSURANCE
COMPANY,

     Garnishee.

_____

Case No. 8:26-cv-407-KKM-SPF

## <u>ORDER</u>

After timely removing this action, Aspen Specialty Insurance Company moves to dissolve a post-judgment writ of garnishment entered against it in Florida state court. Mot. (Doc. 15). Plaintiff Meadowcroft Condominium Association, Inc., responds in opposition, Resp. (Doc. 19), and moves for leave to file a supplemental complaint, Rule 15 Mot. (Doc. 28). Both because Aspen's motion is untimely and because Aspen's and Meadowcroft's pleading present factual disputes, I deny Aspen's motion to dissolve the writ. And because the

parties' pleadings properly frame the disputed issues relevant to assessing the writ of garnishment's validity, I deny Meadowcroft's motion for leave to file a supplemental complaint.

## I.    BACKGROUND

In July 2024, Meadowcroft sued Florida Southern Roofing & Sheet Metal, Inc., (FSR) and one of its insurers, the Ohio Casualty Insurance Company, in Florida state court for "damages arising from the negligent and defective design and construction, replacement, and repair of the roofs" in Meadowcroft's condominium buildings. Compl. (Doc. 1-1) ¶¶ 1–2. Meadowcroft dismissed its claim against Ohio with prejudice, (Doc. 1-2), and entered into a *Coblentz* agreement[1] with FSR, Notice of Removal (Doc. 1) ¶ 3. In November 2025, the state court entered a final consent judgment against FSR and in favor of Meadowcroft for $9,252,309.25 in damages. *Id.* ¶ 4 (citing (Doc. 1-3)).

On January 5, 2026, Meadowcroft moved under § 77.03, Florida Statutes, for issuance of a writ of post-judgment garnishment against Aspen Specialty Insurance Company, seeking to collect on the consent judgment against FSR through four insurance policies issued by Aspen to FSR. *See id.*

---

[1] A *Coblentz* agreement "involves an agreement for entry of a consent judgment against an insured in situations where the insurer declines to defend or offers to defend under a reservation of rights. In return for a stipulated judgment, the claimant agrees not to execute against the insured." *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1147 n.2 (11th Cir. 2010) (citing *Coblentz v. Am. Sur. Co. of New York*, 416 F.2d 1059 (5th Cir. 1969) (citation modified)).

¶ 5 (citing (Doc. 1-4)). Four days later, the state court entered a post-judgment writ of garnishment against Aspen in the amount of $9,252,309.25, plus interests and costs. *Id.* ¶ 6 (citing (Doc. (1-5)). After receiving service through the Florida Department of Financial Services, Aspen timely filed its answer to the motion and moved to dissolve the writ of garnishment. *Id.* ¶¶ 7–9 (citing (Docs. 1–6, 1-7)); *see* § 77.04, Fla. Stat. (requiring the garnishee to file an answer to the writ within twenty days of service). Aspen denies being indebted to Meadowcroft and "argues that the Consent Judgment and corresponding Writ are invalid and uncollectable because the Policies do not provide coverage for the claims made and damages sought by Meadowcroft against FSR in the Lawsuit." Notice of Removal ¶ 9. Additionally, Aspen argues "that Meadowcroft cannot enforce the Consent Judgment against Aspen without first bringing an action against Aspen to establish the *Coblentz* factors." *Id.*

On February 12, 2026, Aspen removed the garnishment proceeding to this Court, invoking diversity jurisdiction under 28 U.S.C. § 1332.[2] *See id.*

---

[2] Complete diversity is satisfied. Meadowcroft and FSR are Florida citizens, and Aspen is a citizen of New Jersey and North Dakota. *See* Notice of Removal ¶¶ 19–21. Ordinarily, "in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of . . . every State and foreign state of which the insured is a citizen." 28 U.S.C. § 1332(c)(1). The garnishment proceedings here do not qualify as a "direct action" because Meadowcroft is not entitled "to bring suit against [FSR's] liability insurer without joining the insured or first obtaining a judgment against him." *Fortson v. St. Paul Fire and Marine Ins. Co.*, 751 F.2d 1157, 1159 (11th Cir. 1985); *see Smith v. Evanston Ins. Co.*, No. CV 05-B-2326-S, 2006 WL 8436898, at *1 (N.D. Ala. July 14, 2006). Instead, upon entry of the consent judgment, FSR's

3

¶¶ 17–23. Shortly thereafter, Meadowcroft replied to Aspen's answer and responded to Aspen's motion to dissolve the writ of garnishment. Reply (Doc. 9); § 77.061, Fla. Stat. Specifically, Meadowcroft contends that Aspen declined to defend FSR despite its duty to do so, and that Meadowcroft "will prove the elements required to enforce the Consent Judgment against Aspen under Florida's *Coblentz* framework." Reply at 7.

Four days later, Aspen re-filed its motion to dissolve the post-judgment writ of garnishment, acknowledging that its pending motion in state court was denied upon removal. *See* Mot. at 1 n.1 (citing M.D. Fla. Local Rule 1.06(c)). Meadowcroft opposes dissolution of the writ. *See* Resp.

Separately, Meadowcroft moves for leave to file a supplemental complaint under Federal Rule of Civil Procedure 15(d), *see* Mot. for Leave, which Aspen opposes, *see* Aspen Resp. (Doc. 30).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 69 provides that proceedings in aid of judgment or execution shall be governed by the procedure of the state where the court is located. *See* FED. R. CIV. P. 69(a)(1). Accordingly, "Florida law must

---

interests became aligned with Meadowcroft's interests, and thus they are both treated as party plaintiffs for purposes of assessing diversity jurisdiction. *See City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1314 (11th Cir. 2012); *see also Boyan v. First Acceptance Ins. Co.*, No. 5:11-CV-593-OC-10TBS, 2011 WL 13319595, at *7 (M.D. Fla. Dec. 23, 2011).

be applied to writs of garnishment that are brought before a federal court in Florida." *Ciserella v. Wildhawk Holdings, S.A.,* No. 2:12-CV-136FtM-PAM-DNF, 2014 WL 12989109, at *1 (M.D. Fla. Dec. 11, 2014).

Under Florida law, "a person who has recovered a judgment in any court against any entity has a right to a writ of garnishment." *Fresenius Vascular Care, Inc. v. Vasudeva,* No. 8:21-CV-1474-VMC-JSS, 2023 WL 4947918, at *1 (M.D. Fla. Aug. 3, 2023) (citing § 77.01, Fla. Stat.). "[T]o obtain a post-judgment writ of garnishment, 'the plaintiff . . . shall file a motion (which shall not be verified or negative defendant's exemptions) stating the amount of the judgment.'" *Orso as trustee to Bell v. Alexis,* No. 21-60251-CIV-SINGHAL/VALLE, 2022 WL 2340960, at *1 (S.D. Fla. May 9, 2022) (quoting § 77.03, Fla. Stat.).

After the writ of garnishment is served on the garnishee, the garnishee is liable "for all debts due by him or her to defendant and for any tangible or intangible personal property of defendant in the garnishee's possession or control at the time of the service of the writ or at any time between the service and the time of the garnishee's answer." § 77.06(1), Fla. Stat. "Service of the writ creates a lien in or upon any such debts or property at the time of service or at the time such debts or property come into the garnishee's possession or control." *Id.* "[W]hen a plaintiff holding a judgment serves a writ of garnishment upon a garnishee, the plaintiff steps into the shoes of the

judgment debtor and can assert only the rights that the judgment debtor could have asserted against the garnishee." *Alejandre v. Telefonica Larga Distancia, de Puerto Rico, Inc.*, 183 F.3d 1277, 1286 (11th Cir. 1999).

To contest the writ, a garnishee must file an answer to the writ for garnishment within twenty days after service of process. § 77.04, Fla. Stat. The answer "must indicate whether the garnishee has property of the defendant under his or her control, or knows of any other person indebted to the defendant." *Navon, Kopelman & O'Donnell, P.A. v. Synnex Information Technologies Inc.*, 720 So.2d 1167, 1168 (Fla. 4th DCA 1998) (per curiam). "When any garnishee answers and [the] plaintiff is not satisfied with the answer, he or she shall serve a reply within 20 days thereafter denying the allegations of the answer as he or she desires." § 77.061, Fla. Stat. "Judgment against the garnishee on the garnishee's answer or after trial of a reply to the garnishee's answer shall be entered for the amount of his or her liability as disclosed by the answer or trial." *Id.* § 77.083.

Additionally, "[t]he defendant and any other person having an ownership interest in the property, as disclosed by the garnishee's answer, shall file and serve a motion to dissolve the garnishment within 20 days after the date indicated in the certificate of service on the defendant and such other person of the plaintiff's notice required by s. 77.055, stating that any allegation in plaintiff's motion for writ is untrue." § 77.07(2), Fla. Stat. Failure to timely file

6

the motion to dissolve "shall result in the striking of the motion as an unauthorized nullity by the court, and the proceedings shall be in a default posture as to the party involved." § 77.07(2), Fla. Stat.

"The statutory right to move to dissolve the writ is granted only to the defendant and any other person having an ownership interest in the property, as *disclosed by the garnishee's answer*." *Navon*, 720 S.2d at 1168; *see also* § 77.07(2), Fla. Stat. Still, a garnishee can raise in defending a garnishment suit any defenses they might have against the principal debtor. *Tomlin v. Anderson*, 413 So.2d 79, 82 (Fla. 5th DCA 1982); *Windsor-Thomas Grp., Inc. v. Parker*, 782 So. 2d 478, 483 (Fla. 2d DCA 2001) (explaining that Section 77.07(2) "do[es] not prohibit the garnishee from raising defenses to the writ"); *but see Stansell v. Revolutionary Armed Forces of Columbia*, No. 8:09-CV-2308-T-26MAP, 2011 WL 13136297, at \*2 (M.D. Fla. Oct. 19, 2011) (recognizing "that there is a substantial difference of opinion under Florida law with regard to the standing of a garnishee to file a motion to quash or vacate a writ of garnishment").

Ultimately, "[t]he issue, if any, raised by the pleadings shall be tried at the same time as the issue, if any, made by defendant's motion to plaintiff's motion." § 77.07(4), Fla. Stat.

7

## III.   ANALYSIS

Aspen argues that the writ is "fatally flawed" and must be dissolved for three principal reasons. First, Aspen claims that Meadowcroft impermissibly seeks to collect the full $9.2 million judgment despite already receiving $4 million from another of FSR's insurers. Mot. at 2. Second, Aspen contends that the writ "arbitrarily assigns identical to-the-dollar-and-cent damage assessments to each of the two insurance policy years at issue." *Id.* Finally, Aspen avers that the *Coblentz* agreement underpinning the writ is unreasonable and unenforceable because Meadowcroft cannot prove that FSR was entitled to coverage from Aspen in the first place. *See id.*

Before engaging Aspen's arguments on the merits of the insurance coverage dispute, Meadowcroft responds that Aspen's motion to dissolve the writ must be denied because "it is untimely and fails to state a basis for dissolution under [Section 77.07(2), Florida Statutes]." Resp. at 2. Meadowcroft contends that even if the motion were timely, it raises factual disputes that cannot be resolved at this stage. *See id.* at 10–20. I agree on both points.

### A. Section 77.07

Meadowcroft first argues that the motion is untimely because it was filed more than twenty days after Aspen was first served with the writ of garnishment. Resp. at 2–5. Meadowcroft is correct.

8

Section 77.07(2) provides that a "person having an ownership in the property . . . shall file and serve a motion to dissolve the garnishment within 20 days after the date indicated in the certificate of service on the defendant and such other person of the plaintiff's notice required by s. 77.055, stating that any allegation in plaintiff's motion for writ is untrue." Meadowcroft provided the statutorily required notice on February 4, 2026. *See* (Doc. 19-1). Aspen, as a party "having an ownership in the property," was required to file any motion no later than February 24, 2026. § 77.07(2), Fla. Stat. Aspen did so when it filed its combined answer and motion to dissolve the writ in state court on February 2, 2026.[3] *See* (Doc. 1-7).

Ten days later, though, Aspen removed the garnishment proceeding to this Court. *See* Notice of Removal. As both parties acknowledge, upon Aspen's removal, its pending state court dissolution motion was automatically denied without prejudice under Local Rule 1.06(c). *Compare* Mot. at 1 n.1, *with* Resp. at 7. Recognizing as much, albeit perhaps belatedly, Aspen refiled its motion to dissolve the writ on February 27, 2026, three days after the original state court deadline set by Section 77.07. *See* Mot. Aspen's re-filed motion is not only late but raises new arguments that respond directly to Meadowcroft's reply. In

---

[3] Aspen's initial answer and motion to dissolve preceded the statutory notice because Aspen, as garnishee, had already been served on January 14, 2026, through the Florida Department of Financial Services. *See* Notice of Removal ¶¶ 7–8.

effectively supplementing its dissolution motion, Aspen does not explain whether removal tolled the deadline or argue that its now-untimely motion relates back to its originally filed motion. Without any argument to the contrary, I agree with Meadowcroft that Aspen's "present filing is therefore a new motion," and thus untimely. Resp. at 7.

Under Florida law, "[g]arnishment proceedings are statutory in nature and require strict adherence to the provisions of the statute." *Zivitz v. Zivitz*, 16 So. 3d 841, 847 (Fla. 2d DCA 2009); *Akerman Senterfitt & Eidson, P.A. v. Value Seafood, Inc.*, 121 So. 3d 83, 86 (Fla. 3d DCA 2013) ("It is fundamental that garnishment statutes must be strictly construed."). Section 77.07 contains no tolling provision, equitable or otherwise. Instead, nothing in the statutory text or structure "negate[s] the necessity for timely compliance with the statutory time frame." *Branch Banking & Tr. Co. v. Carrerou*, 730 F. App'x 869, 871 (11th Cir. 2018) (per curiam) (quoting *Zivitz*, 16 So. 3d at 847). Nor does Aspen's decision to remove the proceeding to federal court alter the statutory requirements. The moment Aspen removed the garnishment proceeding to federal court, its motion to dissolve was denied without prejudice. *See* M.D. Fla. Local Rule 1.06(c) ("A motion pending in state court when the action is removed *is denied* without prejudice.") (emphasis added). Aspen had until February 24, 2026, to refile its motion to dissolve, but did not do so until

10

February 27. Aspen's motion to dissolve the writ is therefore an "unauthorized nullity" and due to be denied as untimely. § 77.07(2), Fla. Stat.

Even assuming that Aspen's motion was timely filed, Meadowcroft avers that Aspen's motion raises arguments and questions of fact that exceed the limited scope authorized by Section 77.07. *See* Resp. at 8–10. I agree insofar as Aspen attacks the underlying *Coblentz* agreement between Meadowcroft and FSR.

"After judgment has been obtained against defendant but before the writ of garnishment is issued, the plaintiff . . . shall file a motion (which shall not be verified or negative defendant's exemptions) stating the amount of the judgment." § 77.03, Fla. Stat. Section 77.07(2) then authorizes the defendant or garnishee to "stat[e] that any allegation in plaintiff's motion for writ is untrue." Here, Meadowcroft's motion for a writ stated the amount of the judgment and claimed that "[p]roceeds from certain insurance policies issued by Aspen . . . to FSR . . . provide coverage for the Judgment." (Doc. 1-4) ¶ 6. Aspen denies that there is "an actual 'debt due' to FSR by Aspen under the Policies," and thus fairly denies that its insurance policies cover the seven-figure consent judgment. *See* Mot. at 5.

But Aspen raises other arguments that do not squarely attack the truth of allegations in Meadowcroft's motion. For example, Aspen also argues that the writ is unenforceable "because it represents a clear failure to apportion

11

damages that may be subject to coverage under the Policies," noting that Meadowcroft "has already received $4,000,000 from another insurer, Evanston Insurance Company, for pre-inception damages." Mot. at 5.

Aspen also directly attacks the enforceability of the *Coblentz* agreement that preceded entry of the consent judgment. To recover against an insurer under such an agreement, a plaintiff must prove that (1) the insurance policy covers the settlement in the *Coblentz* agreement; (2) the insurer wrongfully refused to defend the insured in the lawsuit; and (3) the settlement in the *Coblentz* agreement was reasonable and in good faith. *See Travelers Indem. Co. of Conn. v. Richard McKenzie & Sons, Inc.*, 326 F. Supp. 3d 1332, 1338 (M.D. Fla. 2018). Aspen's motion challenges the third prong, contending that "the Consent Judgment is undoubtedly a product of bad faith collusion between Meadowcroft and FSR because it intentionally frames the entire $9,252,309.25 awarded to Meadowcroft as 'damage to other property' in a transparent attempt to inappropriately shoehorn the entire damages award into the standard 'property damage' definition commonly found within commercial general liability [] policies." Mot. at 14. Like the apportionment argument, Aspen's attack on the *Coblentz* agreement does not "stat[e] that any allegation in plaintiff's motion for writ is untrue," § 77.07(2), Fla. Stat., but instead asserts extra-motion defenses and contests the writ's validity based on Meadowcroft and FSR's purported prejudgment conduct.

12

But it is only in Aspen's answer—and not the motion to dissolve—that Aspen may properly raise the "defenses [Aspen] may have had in a suit by the debtor and claims for setoff," such as the policy coverage limitations and FSR's bad faith in entering a consent judgment. *Windsor-Thomas*, 782 So. 2d at 483–84; *see* Resp. at 5–6. Aspen's answer squarely raises these defenses, for example, contending that "Meadowcroft has not carried its burden of demonstrating that the Policies provide coverage for FSR in connection with this lawsuit or the Consent Judgment. The Consent Judgment is therefore unenforceable against Aspen, and Aspen is not indebted to FSR." Ans. (Doc. 1-7) ¶ 9. Aspen likewise lodges its full panoply of attacks against the *Coblentz* agreement, *see id.* ¶¶ 14–23, and the apportionment of damages, *id.* ¶ 28. These challenges necessarily raise questions of fact, which Meadowcroft directly "denies" in its reply. *See* Reply ¶ 1.

Where the pleadings raise factual disputes about the propriety of the debt owed, "[j]udgment against the garnishee on the garnishee's answer or *after trial of a reply* to the garnishee's answer shall be entered for the amount of his or her liability as disclosed by the answer or trial." § 77.083, Fla. Stat (emphasis added); *see RPS, Inc. v. Travel Max Int'l, Inc.*, 823 So. 2d 243, 244 (Fla. 4th DCA 2002). This "require[s] that the trial court hold a trial to resolve the factual dispute raised by [the garnishee's] answer to the writ of garnishment and [the judgment creditor's] reply." *Navy Fed. Credit Union v.*

13

*Veros Credit, LLC*, No. 5D2024-1804, ___ So. 3d ____, 2026 WL 969520, at *2 (Fla. 5th DCA Apr. 10, 2026); *see Zelaya/Cap. Int'l Judgment, LLC v. Zelaya*, 769 F.3d 1296, 1304 (11th Cir. 2014) ("The purpose of jury trials in garnishment actions, moreover, is to resolve any issues raised in a garnishee's answer to the writ of garnishment."); *see also Navy Fed. Credit Union v. Veros Credit, LLC*, 396 So. 3d 590, 592 (Fla. 4th DCA 2024) (holding that when a plaintiff's reply contests a garnishee's answer to the writ of garnishment, section 77.083 requires a trial or proper evidentiary hearing to resolve the dispute). Because this matter is set for trial on the disputed factual issues raised in the parties' pleadings, resolution on Aspen's motion to dissolve would be premature, even assuming the motion had been timely filed.[4]

Accordingly, Aspen's motion to dissolve the writ of garnishment is denied.

### B. Supplemental Complaint

Meadowcroft moves under Federal Rule of Civil Procedure 15(d) for leave to file a supplemental complaint "to align the pleadings and case structure with

---

[4] Aspen appears to have acknowledged this potential outcome in the jointly filed Case Management Report. *See* (Doc. 20) at 4 ("In order to resolve the instant dispute, the Court will need to determine, among other things: (1) whether the Writ is facially and substantively valid; and (2) whether the Association can carry its burden of demonstrating the *Coblentz* factors so as to render the Consent Judgment and corresponding Writ enforceable. These questions will require insurance contract interpretation. A jury trial may also potentially be needed if the Court concludes that material fact questions exist which preclude summary disposition.").

14

the controversy before the Court," which Meadowcroft contends has "developed into a direct dispute between Meadowcroft and Aspen over Aspen's obligations arising from the policies issued to FSR." Rule 15 Mot. at 2. More specifically, Meadowcroft explains it has been assigned "FSR's rights, claims, and interests against Aspen arising from the subject policies." *Id.* at 6. Aspen counters that Meadowcroft's motion is futile because it seeks to "enforce a *Coblentz* agreement based on mere breach of contract claims," which do not incorporate the independent requirements of refusal to defend, reasonableness, and good faith. *See* Aspen Resp. at 9. Both parties overlook that the operative garnishment pleadings capture these core disputes.

Under Rule 15(d), the court in its discretion may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." "A supplemental pleading is an appropriate vehicle by which to set forth new facts in order to update the earlier pleading, or change the amount or nature of the relief requested in the original pleading." *Lussier v. Dugger*, 904 F.2d 661, 670 (11th Cir. 1990) (citation modified). Ultimately, in choosing whether to grant leave to file a supplemental complaint, "the bottom line is: Would the supplementation promote 'the efficient administration of justice?'" *W. Alabama Women's Ctr. v. Miller*, 318 F.R.D. 143, 148 (M.D. Ala. 2016) (quoting

15

*New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 28–29 (4th Cir. 1963) (citation modified)).

Here, the answer is "no." To be sure, in a removed action, federal courts must realign the parties to reflect their interests in the litigation, as measured by "the principal purpose of the suit" and "the primary and controlling matter in dispute." *City of Vestavia Hills v. General Fidelity Ins. Co.*, 676 F.3d 1310, 1314 (11th Cir. 2012). Thus, where "the original and sole purpose of this garnishment proceeding is for [Meadowcroft] to recover money from [Aspen] under [FSR's] policy of insurance," Meadowcroft and FSR "have the same ultimate interest in this action" and are properly aligned as plaintiffs against Aspen. *Boyan v. First Acceptance Ins. Co.*, No. 5:11-CV-593-OC-10TBS, 2011 WL 13319595, at *7 (M.D. Fla. Dec. 23, 2011); *Chugh v. Nautilus Ins. Co.*, No. 6:24-CV-584-ACC-LHP, 2024 WL 4894209, at *3 (M.D. Fla. July 16, 2024) (realigning the plaintiff and insured as party plaintiffs against the defendant insurer). That much was true at the time Meadowcroft and FSR entered a *Coblentz* agreement, and thus a supplemental complaint is unnecessary to accomplish realignment.

Instead, "the well settled rule in Florida" remains "that a plaintiff who has obtained a judgment against a defendant may proceed in garnishment against the defendant's insurer immediately upon the entry of a final judgment by the trial court." *Pippin v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 845 F.

16

Supp. 849, 852 (M.D. Fla. 1994) (citation modified). And contrary to Aspen's position "that the proper procedure for enforcing a *Coblentz* agreement involves the injured party suing the insurer to prove all the *Coblentz* factors," Aspen Resp. at 14, "numerous reported decisions from Florida's courts demonstrate that Florida courts may determine insurance coverage issues in the course of ancillary garnishment proceedings," *Fed. Ins. Co. v. Hamptons at Metrowest Condo. Ass'n, Inc.*, No. 6:13-CV-1087-ORL-37, 2014 WL 299107, at *2 (M.D. Fla. Jan. 28, 2014) (collecting cases).

That Florida courts "may" adjudicate coverage disputes in garnishment proceedings is not in tension with Aspen's position that other mechanisms, such as declaratory judgment actions, are also proper for litigating *Coblentz* agreements. *Cf. Mt. Hawley Ins. Co. v. Park Ave. At Metrowest, Ltd.*, No. 6:13-CV-556-ORL, 2013 WL 6858946, at *4 (M.D. Fla. Dec. 30, 2013) (explaining that "either a declaratory judgment in this Court or further proceedings in state court could resolve the Policy coverage issue" related to garnishment action). Nor does language from Florida courts suggesting that "the injured party must bring *an action* against the insurer" dictate that "an action" cannot be one in garnishment. *Quintana v. Barad*, 528 So. 2d 1300, 1301 at n.1 (Fla. 3d DCA 1988) (per curiam) (emphasis added); *see Space Coast Credit Union v. The First, F.A.*, 467 So.2d 737, 739 (Fla. 5th DCA 1985) ("Although a garnishment proceeding is ancillary or collateral to the main action

17

establishing the debt, a garnishment proceeding, like an attachment proceeding, is separate and distinct from the main action." (citation modified)).

Once a party has received a writ of garnishment, any "ancillary garnishment proceedings" in this Court must accord with Florida's statutory procedures, *see* FED. R. CIV. P. 69(a)(1), which provide for a trial on the garnishee's answer to the writ of garnishment and the plaintiff's reply, *see* § 77.083, Fla. Stat. And, as explained above, the answer and reply adequately frame the coverage dispute and the disputed reasonableness of the *Coblentz* agreement. *Cf.* Reply to Rule 15 Mot. (Doc. 33) at 7 (suggesting that the relevant "policies, judgment, settlement, assignment, and enforceability issues [are] already before the Court").

At bottom, Meadowcroft recognizes that "[n]o one disputes that" "[it] cannot recover unless it establishes coverage, wrongful refusal to defend, reasonableness, and good faith." *Id.* at 2; *accord* Aspen Resp. at 13 ("Meadowcroft cannot escape its burden of demonstrating the *Coblentz* factors by attempting to turn this lawsuit into a simple breach of contract case."). Thus, because Meadowcroft's supplemental complaint would merely reallege the core issues already framed by the parties' pleadings and would circumvent Florida's framework for garnishment proceedings, the motion for leave to file a supplemental complaint is denied.

18

## IV.    CONCLUSION

Aspen's motion to dissolve the writ of garnishment fails both because it is untimely and because it raises issues beyond the truth of the allegations in Meadowcroft's motion for a writ. On the other hand, Aspen's answer adequately presents its claims that it is not liable to FSR, had no duty to defend FSR, and cannot be bound by a *Coblentz* agreement that is unreasonable and was not entered into in good faith. And because Aspen's answer and Meadowcroft's reply frame these core issues relevant to Aspen's indebtedness, Meadowcroft's motion for leave to file a supplemental complaint is also denied. Accordingly, the following is **ORDERED**:

1.    Aspen Specialty Insurance Company's Motion to Dissolve the Post-Judgment Writ of Garnishment (Doc. 15) is **DENIED**.

2.    Meadowcroft Condominium Association, Inc.'s Motion for Leave to File a Supplemental Complaint (Doc. 28) is **DENIED**.

3.    This action shall proceed on Aspen's Answer to the Writ (Doc. 1-7) and Meadowcroft's Reply (Doc. 9).

**ORDERED** in Tampa, Florida, July 1, 2026.


Kathryn Kimball Mizelle
United States District Judge

19